IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CLEO ISAIAH SINES, III,       )
          )    CASE NO. 3:21-472
          )
       Plaintiff,     )
          )
   vs.          )    MAGISTRATE JUDGE
          )    JONATHAN D. GREENBERG
          )
COMMISSIONER OF SOCIAL   )
SECURITY,         )
          )    **MEMORANDUM OF OPINION AND**
       Defendant.    **ORDER**

Plaintiff, Cleo Isaiah Sines, III ("Plaintiff" or "Sines"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is VACATED AND REMANDED for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On June 3, 2019, Sines filed an application for SSI, alleging a disability onset date of April 21, 2019, and claiming he was disabled due to right knee problems, prostrate issues, neurological diverticulum bladder, anxiety, being anti-social, having problems adjusting to society, and "not sleeping much." Transcript ("Tr.") at 150, 171. The application was denied initially and upon reconsideration, and Sines requested a hearing before an administrative law judge ("ALJ"). Tr. 99.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

On August 27, 2020, an ALJ held a hearing, during which Sines, represented by counsel, and an impartial vocational expert ("VE") testified.  Tr. 28-62.  On September 15, 2020, the ALJ issued a written decision finding that Sines was not disabled.  Tr. 15-23.  The ALJ's decision became final on January 12, 2021, when the Appeals Council declined further review.  Tr. 1-3.

On March 20, 2021, Sines filed his Complaint to challenge the Commissioner's final decision. Doc. No. 1.  The parties have completed briefing in this case.  Doc. Nos. 17, 19.  Sines asserts the following assignment of error:

The ALJ's residual functional capacity finding is not supported by substantial evidence.

Doc. No. 17, p. 2.

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Sines was born in 1972 and was 46 years-old on the date he filed his application.  Tr. 22.  He has at least a high school education and no past relevant work.  Tr. 22.

### B.    Relevant Medical Evidence[2]

The record shows that, in 2013, Sines had a history of urinary retention/incomplete emptying and a cystoscopy had found 3+ trabeculation of the bladder and a large diverticulum.  Tr. 426.  He was assessed as likely having a neurogenic bladder and a repeat cystoscopy was deemed unnecessary as he had been emptying his bladder twice a day *via* self-catherization without difficulty.  Tr. 426.  He was in prison at that time, and while urodynamics was required for a definitive diagnosis he was unable to obtain one while incarcerated.  Tr. 426.

In July 2018 Sines, still incarcerated, was self-catheterizing four times a day and taking medication for his neurogenic bladder.  Tr. 384.

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

2

In May 2019, Sines, having been released from prison, saw William Eisenman, APRN-CNP, for an initial visit to discuss his bladder problem and to request catheter supplies.  Tr. 1463.  He was self-catheterizing at least 4 times a day.  Tr. 1464.  He had an ultrasound of his pelvic region, which showed a small diverticulum on the left side of the urinary bladder wall.  Tr. 1466-1467.  His prostatic gland was enlarged and there was thickening of the bladder wall suggestive of chronic obstruction or urinary tract infection.  Tr. 1467.

On August 8, 2019, Sines saw surgeon Gregor Emmert, Jr., M.D., for urinary retention and had a cystourethroscopy, which showed benign prostatic hyperplasia with obstruction, multiple bladder diverticula, and acute cystitis changes with chronic urinary retention.  Tr. 1918.  Sines reported that his urine had been cloudy lately and Dr. Emmert sent his urine out for a culture.  Tr. 1918.  Upon exam, his blood pressure was high and he was alert, pleasant, and in no distress.  Tr. 1917.  On August 15, Sines followed up with Dr. Emmert.  Tr. 1912.  Dr. Emmert advised Sines to complete his antibiotic medication, told him that he will always have colonization of the urinary tract, and scheduled him to return in 4 weeks after his urodynamics testing.  Tr. 1915.

On September 26, 2019, Sines returned to Dr. Emmert.  Tr. 1911.  Dr. Emmert advised that Sines had had suboptimal urodynamics as well as late bladder filling sensation and large bladder capacity without evidence of hyperreflexia.  Tr. 1911.  He wrote, "Unfortunately, they did not ask him to attempt urinating, which would have permitted measuring of bladder pressure during attempted voiding, which could if confirmed obstructive [sic] nature to his urinary retention."  Tr. 1911.  Dr. Emmert discussed the possibility of endoscopic management of his prostate and an inter stem implant, and Sines "declines this or offered repeat urodynamics."  Tr. 1911.  Upon exam, his blood pressure was high and he was alert, pleasant, and in no distress.  Tr. 1910.  "At his request, continue intermittent catheterization program."  Tr. 1911.  He was to return in 9 months "with serum creatinine and retroperitoneal

ultrasound." Tr. 1911.

On April 27, 2020, Sines saw Nurse Eisenman for a follow-up for his PTSD and anxiety.  Tr. 1993.  He requested an increase in the number of catheters he got each month because he was having to reuse a few each week.  Tr. 1993.  He was self-catheterizing 5 times daily but would like to increase to 6 times a day.  Tr. 1993.  Eisenman provided a prescription so Sines could get enough catheters to self-catheterize 6 times a day.  Tr. 1994.

In June 2020, Sines had a renal and bladder ultrasound which found "severely trabeculated contour [of] the urinary bladder with what appeared to be a urinary bladder diverticulum, unchanged from the prior study [in July 2019]."  Tr. 2027.  The pattern and appearance were consistent with Sines' history of neurogenic bladder.  Tr. 2027.  There was also an incidental hypoechoic lesion on his spleen which may represent a small cyst with some internal debris.  Tr. 2027.  There were no features of obstructive uropathy.  Tr. 2027.  An abdominal/pelvic CT scan in July 2020 showed a small round nodule of about 0.9 cm located immediately adjacent to the inferior spleen compatible with a small accessory spleen and no other splenic abnormalities, and periampullary duodenal diverticulum.  Tr. 2035.  It showed a prominent prostate gland and a distended bladder with bladder wall trabeculation and several bladder diverticula.  Tr. 2035-2036.

## C.    State Agency Reports

On November 5, 2019, Dr. Mehr Siddiqui reviewed the record and found that Sines retained the functional capacity to lift and carry up to 10 pounds frequently and up to 20 pounds occasionally; stand and/or walk for up to 2 hours in an 8-hour day and sit for up to 6 hours in an 8-hour day; never climb ladders, ropes, or scaffolds; frequently stoop, occasionally kneel, crouch, and crawl, and occasionally climb ramps and stairs.  Tr. 71-72.  On April 23, 2020, Dr. Leslie Green adopted Dr. Siddiqui's findings

4

except that Dr. Green found that Sines could stand and/or walk for a total of 6 hours in an 8-hour

workday and added environmental limitations.  Tr. 83-84.

**D.    Hearing Testimony**

During the August 27, 2020 hearing, Sines testified to the following:

- He lives with his stepmother and her husband in a mobile home.  Tr. 34, 36.  He has a driver's license but does not have a car.  Tr. 37.  Prior to the pandemic, he wasn't leaving the house other than to go to the grocery store when he needed food about once every 2 weeks. Tr. 37.

- When he was in prison he obtained a 2-year degree in business management.  Tr. 38.  He applied for a weekend job at a café-casino and had an interview, but when they asked if he had ever been in prison and he said yes he was told that they could not give him the job.  Tr. 39.

- When asked what he felt prevented him from performing full time work, he stated that he doesn't like being around people, his back hurts all the time, and he has to self-catheterize to go to the bathroom.  Tr. 40.  When asked if he self-caths on a schedule he answered no, it depends on how his stomach feels.  Tr. 40.  When asked about a mention in the record that he was self-cathing 4 times a day and whether that number varied, Sines answered that he self-caths 5 or 6 times a day or more because he is also on water pills.  Tr. 41.  The catheter does not stay in; he has to insert it every time and it takes 15-25 minutes depending on whether his prostrate is swollen.  Tr. 41.  He also gets infections a lot from repeated self-cathing.  Tr. 44.

- When asked if there were any other reasons why he felt he was unable to work, he stated that he is not a sociable person, he doesn't like being around people, and he gets too many infections from cathing himself because most restrooms in the workplace aren't the proper place or clean enough to be cathing.  Tr. 52.  He explained that everything has to be sterile and clean for him to do it.  Tr. 52.  His bedroom in the mobile home is right next to the bathroom.  Tr. 53.

- He cooks simple meals, does his own laundry (the machine is in the home) and takes out the trash.  Tr. 53.  He lets the dog out but doesn't clean up after it because it goes too far away. Tr. 48.  In addition to going to medical appointments and the grocery store, he sometimes visits his brother or sister or a good friend.  Tr. 53-54.  When asked why he didn't go outside the home more or go to social functions, he stated that he is on guard the whole time from his time spent in prison and that he suffers from nightmares.  Tr. 54-55.

The ALJ asked the VE whether a hypothetical individual with the same age, education and

experience as Sines could perform any work if the individual had the limitations assessed in the ALJ's

RFC determination, described below, and the VE answered that such an individual could perform the

5

following representative jobs in the economy: eyeglass assembler, circuit board tester, and costume jewelry maker.  Tr. 57-58.  The ALJ asked if the VE's answer would change of the individual needed at least two additional 15-minute breaks beyond the usual three breaks (a 15-minute break in the morning and afternoon and a 30-60-minute lunch break) and the VE answered that there would be no work for such an individual.  Tr. 58.  When asked about absenteeism and off-task behavior, the VE stated that an individual could not be off-task more than 15% of the workday and could not miss more than one day of work a month.  Tr. 58.

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or

6

combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 7, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: neurogenic bladder, benign prostatic hyperplasia, chronic urinary retention, multiple bladder diverticulum, benign paroxysmal vertigo, mild right hearing loss, right knee myalgia, depression with psychotic features, anxiety, posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. The claimant can understand, remember, and carry out simple instructions and perform simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line. He is able to adapt to routine changes in the workplace that are infrequent and easily explained. He can interact occasionally with supervisors and coworkers, never with the general public and without working in teams or tandem.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on December **, 1972 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since May 7, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 17-23.

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law

8

Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Sines argues that the ALJ erred when he failed to include a limitation in his RFC assessment for additional break periods to accommodate Sines's need to self-catheterize during the workday or explain why he did not include such a limitation.  Doc. No. 17, pp. 9-10.  That error is heightened, Sines asserts, because the ALJ asked the VE whether an individual who needed additional break periods could

9

perform the jobs the VE identified and the VE answered that such an individual could not.  Doc. No. 17, p. 10.  Defendant argues that substantial evidence supports the ALJ's RFC assessment because the ALJ "expressly stated that he considered the evidence of Plaintiff's bladder condition and history of urinary retention/incomplete emptying likely secondary to neurogenic bladder," cited records showing his diagnostic testing, and acknowledged Sines's statements that in July 2018 he was self-catheterizing 4 times a day, self-catheterizing 3 times a day in May 2019, and self-catheterizing 5 to 6 times a day in April 2020.  Doc. No. 19, p. 6 (citing Tr. 20).

As an initial matter, although it is true that the ALJ stated that Sines reported in May 2019 that he was self-catheterizing 3 times a day (Tr. 20), the record the ALJ cited for that statement (Exhibit 2F/4, Tr. 1463) does not indicate the number of times Sines was self-catheterizing, and the next page of that office visit record from May 2019 shows that Sines reported self-catheterizing "at least 4 times daily."  Tr. 1464.  Thus, the ALJ mischaracterized the number of times Sines was self-catheterizing in May 2019.  It is not clear whether that mistaken number of daily self-catheterizations factored into the ALJ's decision because the ALJ did not explain how he evaluated Sines's reports of self-catheterization. The ALJ also referenced a treatment note stating that Sines self-catheterized 4 times a day in July 2018 (Tr. 20, Exhibit 1F/121, Tr. 384), so if the ALJ believed that Sines was self-catheterizing less in May 2019 than he was in July 2018 (and that his condition had somehow improved), that belief was mistaken.

And while it is true that the ALJ acknowledged Sines's "history of urinary retention/incomplete emptying likely secondary to neurogenic bladder" and his cystourethroscopy and CT results, he did not provide reasons why he did not believe that Sines would need additional breaks to self-catheterize. Defendant submits that the ALJ relied on the state agency reviewers, who, in turn, had considered Sines's reported self-catheterizing five times a day and had not provided a limitation for additional

10

breaks.  Those opinions, Defendant asserts, constitute substantial evidence to support the ALJ's

decision.  Doc. No. 19, p. 7.  But the state agency reviewers were not presented with Sines's testimony

describing aspects of his self-catheterizing that the ALJ was.  At the hearing, the ALJ asked Sines

whether he self-catheterizes on a schedule and Sines said no.  Tr. 40.  The ALJ asked Sines about a

mention in the record that he was self-catheterizing 4 times a day and whether that number varied and

Sines said that he self-catheterizes 5 or 6 times a day or more because he is on "water pills."  Tr. 41.

The ALJ asked Sines if his catheter stays in or if he has to insert it every time and Sines said that he has

to insert it every time.  Tr. 41.  Sines stated that it takes 15-25 minutes to insert it depending on whether

his prostrate is swollen.  Tr. 41.  He stated that he gets repeat infections, he needs a sterile place to do it,

and that his bedroom in the mobile home where he lives is right next to the bathroom.  Tr. 52-52.  Thus,

evidence that Sines is self-catheterizing at least 5-6 times a day, at unscheduled times, for 15-25 minutes

each time is substantial, relevant evidence that the state agency reviewers were not presented with.  The

ALJ was presented with that evidence, but he failed to explain why he discounted it, if he did discount it,

or why he did not find that it would cause Sines to need additional breaks during the workday.

Defendant argues that the ALJ "considered and declined to accept Plaintiff's pre-hearing

allegations of excessive absenteeism due to needing bathroom breaks, reasoning that there was no

support in the medical findings or opinion evidence to support such a limitation."  Doc. No. 19, p. 7.

Prior to the hearing, Sines's counsel filed a brief in which counsel detailed the physical and

psychological medical evidence in the record and concluded,

> The cumulative effects of claimant's impairments and symptoms would result in marked
> absenteeism due to mental health related symptoms and/or the need for an inordinate amount and
> [sic] restroom breaks due to self-catheterization. He would become easily distracted by his
> symptoms, which would significantly interfere with his ability to maintain attention,
> concentration, persistence and pace.  He would be off-task too much during a typical work day
> and/or work week to an extent far exceeding employer tolerances.

Tr. 261.  Considering counsel's brief, the ALJ wrote,

11

> Counsel argued in a prehearing brief that the effects of the claimant's impairments and symptoms would result in absenteeism and off-task behavior that would keep the claimant from performing work (Exhibit 14E/6). I considered counsel's argument. However, the record fails to document residual symptoms severe enough to require the proposed limitations, and find it is not supported by the overall evidence of record for the reasons discussed below. No treatment provider has offered an opinion supporting these limitations.

Tr. 12.

The ALJ's explanation does not shed light on his conclusion regarding how Sines's self-catheterizing 5 or 6 times a day would impact his ability to perform work because the ALJ did not identify what impairments counsel had identified that he believed was not supported by the record. Moreover, while there is no treatment provider's opinion in the record assessing Sines's ability to perform work based on his physical impairments, the absence of a provider's opinion does not let the ALJ off the hook with respect to Sine's self-catheterizing in this case.  It is undisputed that Sines has a bladder impairment that requires him to self-catheterize and records support his testimony that he self-catheterizes 5-6 times a day.  The ALJ made a point to ask Sines about the nature of his self-catheterizing (how often, when, how long it took) and Sines's answers to the ALJ's questions (5-6 times or more a day, at unscheduled times, for 15-25 minutes a time) could support a finding that Sines needs additional breaks in an 8-hour workday to self-catheterize.  The VE testified that additional breaks would be work preclusive.  But the ALJ, without explanation, concluded that additional breaks were unnecessary and his failure to explain why, given the above, is error.  Because the Court is unable to determine whether the ALJ's RFC assessment is supported by substantial evidence, it must be reversed. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (when the analysis supplied by the ALJ prevents a court from assessing whether the decision is supported by substantial evidence, the court must reverse).

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is VACATED AND REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date: February 11, 2022                    _s/ Jonathan Greenberg_
                                           Jonathan D. Greenberg
                                           United States Magistrate Judge

13